**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

KEMPER INVESTORS LIFE
INSURANCE COMPANY,

        Interpleader Plaintiff,

 v.

STEVEN M. SUMBERG,

and

HOWARD M. DAFFNER, ESQ.,

        Interpleader Defendants.

---

Civil Action 04-00948 (HHK)

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion for summary judgment [#76] of interpleader plaintiff

Kemper Investors Life Insurance Company ("Kemper").  Upon consideration of the motion, the

opposition and response thereto, and the record of the case, the court concludes that the motion

must be granted.

**I. BACKGROUND**

In 1984, Ruth Sumberg purchased an annuity policy from Kemper.  Def. Sumberg's Ex. 1

("Annuity").  Included among the policy's terms are grants of certain ownership rights.  The

Annuity provides that the policy owner may both change ownership of the policy and withdraw

funds from the Annuity.  As to ownership changes, the policy states:

> CHANGE OF OWNERSHIP — Ownership may be changed at any time during the Annuitant's lifetime.  Such change requires the Owner's written notice to the Company.  No such change shall take effect unless received by the Company.  Upon receipt, any such change shall take effect as of the date it was signed.

Annuity at 0033.[1]  As to the right to withdraw, the policy owner may demand payment of a sum matching the "Termination Value" (the contract value minus charges and any debt) at any time prior to the date of maturity.  *Id.* at 0034–35.

In 1994, Ms. Sumberg sought to reduce the size of her estate by transferring ownership of the Annuity to her children, Billie Daffner and defendant Steven Sumberg.  Mr. Sumberg contacted Kemper, who informed him he could transfer ownership by sending a letter of instruction to Kemper.  He then prepared such a letter, which Ms. Sumberg reviewed, signed, and sent to Kemper on September 1, 1994.  In pertinent part, the letter stated that Ms. Sumberg wanted to "transfer ownership of the Contract from me to my son, Steven M. Sumberg, and daughter, Billie S. Daffner, who are and will remain the sole beneficiaries of the Contract."  Pl.'s Ex. 6 ("Transfer Letter").

On April 11, 2002, Billie Daffner died.  Thereafter, Mr. Sumberg sent a "Non-Financial Change Form" to Kemper, requesting that Ms. Daffner's ownership be transferred to him.  Pl.'s Ex. 7 (Steven Sumberg Ltr. to Zurich Life, January 14, 2003).  Kemper responded by letter stating that it had updated its records in accordance with his request, and that "Billie Daffner has been removed as joint owner."  Pl.'s Ex. 8 (Brandy Ltr. to Steven Sumberg, January 22, 2003).

---

[1] Under the Annuity, "Owner" and "Annuitant" referred at the time of purchase to Ms. Sumberg, and "Company" referred to Kemper.  Her children, Billie Daffner and defendant Steven Sumberg, each were designated as "Beneficiaries" (i.e., recipients, upon the death of the annuitant, of the post-maturity annual income otherwise due to the annuitant) and were each entitled to 50 percent of the annuity payments.

In October of that year, Billie Daffner's husband, defendant Howard Daffner, was appointed administrator of her estate.  Pl.'s Ex. 9 (Appointment, Oct. 10, 2003).  Shortly thereafter, in correspondence with Kemper, Mr. Daffner asserted an ownership interest in half of the Annuity.  Pl.'s Ex. 10 (Howard Daffner Ltr. to McMahon, Dec. 19, 2003).  He claimed that the 1994 ownership transfer effected by Ms. Sumberg created a tenancy in common, rather than a joint tenancy, between Ms. Daffner and Mr. Sumberg, and that therefore Mr. Sumberg had no right of survivorship to Ms. Daffner's ownership interest.  *Ibid.*  That interest, he argued, passed to Ms. Daffner's estate.  *Ibid.*  He therefore asked that Kemper's records be amended to reflect the estate's continued interest.  *Ibid.*  He repeated this request over the phone and by letter a few weeks later.  Def. Sumberg's Ex. 16 (Howard Daffner Ltr. to Leali, Jan. 15, 2004).  He then requested a withdrawal of one-half of the Annuity's termination value, payable to the estate.  Pl.'s Ex. 12 (Howard Daffner Ltr. to McMahon, Jan. 29, 2004).  Kemper complied with this request, sending a check for $229,518.34.  Pl.'s Ex. 13 (McMahon Ltr. to Howard Daffner, Feb. 9, 2004), Ex. 14.[2]

Following this payment, Mr. Sumberg asserted that Ms. Daffner's interest transferred to him upon her death, and not to the estate.  Kemper responded by filing this interpleader action, seeking, among other things, a declaratory judgment regarding the rights of the parties.  Mr. Sumberg then brought counterclaims and crossclaims against Kemper and Mr. Daffner.   Kemper

---

[2] Though the parties dispute the estate's claim to the money it withdrew, no party disputes that *if* the estate was entitled to ownership of the Annuity, the amount drawn therefrom was the proper "Termination Value" of a 50 percent interest.

has now filed a motion for summary judgment, arguing that Ms. Daffner's interest was properly

asserted by Mr. Daffner, and that Mr. Sumberg has no claim thereto.[3]

## II.  ANALYSIS

**A.      Standard of Review**

The court reviews motions for summary judgment to determine whether "there is no

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a

matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ.

P. 56(c)).  A genuine dispute about a material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.* at 248.  Evidence is to be viewed "in the

light most favorable to the nonmoving party, draw[ing] all reasonable inferences in its favor, and

eschew[ing] making credibility determinations or weighing the evidence." *United States v.*

*Project on Gov't Oversight*,  454 F.3d 306, 308 (D.C. Cir. 2006).

**B.      Choice of Law**

Where, as here, jurisdiction is based on diversity, the court will "apply the choice of law

rules for the jurisdiction in which it sits." *Meng v. Schwartz*, 305 F. Supp. 2d 49, 58 (D.D.C.

2004).  Courts in the District of Columbia have looked to the Second Restatement of Conflicts of

Law to determine which law to apply in a given case.  *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*,

---

[3] The motion does not seek judgment as to any particular counts of the complaint and
only addresses one subject: the nature of the competing ownership interests.  (It does not address
other issues, such as whether, assuming Billie Daffner's interest passed to her estate, Mr.
Howard's withdrawal of a portion of the annuity's value was a proper exercise of the estate's
property and contractual rights.)  Accordingly, the court will treat the motion as one seeking
partial summary judgment only as to that aspect of Count II of the complaint which seeks a
declaratory judgment that the estate of Billie Daffner asserted a valid ownership interest in the
annuity.

129 F.3d 143, 148 (D.C. Cir. 1997) (citing *Fin. Am. Corp. v. Moyler*, 494 A.2d 926, 929 & n.7

(D.C. 1985)).  The Restatement instructs that an annuity should be treated in the same manner as

a life insurance contract.  Restatement (Second) of Conflicts of Law § 192, cmt. *l* (2006).  Life

insurance policies are to be assessed under "the local law of the state where the insured was

domiciled at the time the policy was applied for, unless, with respect to the particular issue, some

other state has a more significant relationship" to the transaction and the parties.  *Id.* § 192.

Before applying the Restatement, however, "the court must first determine if there is a

conflict between the laws of the relevant jurisdictions."  *Young Women's Christian Ass'n of the*

*Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada*,  275 F.3d 1145, 1150 (D.C. Cir. 2002).

"Only if such a conflict exists must the court then determine, pursuant to District of Columbia

choice of law rules, which jurisdiction has the 'more substantial interest' in the resolution of the

issues."  *Ibid.*

The two relevant jurisdictions here are Arizona and New York.[4]  The court need not

determine which state's law to apply, however, because there is no conflict of law between them.

Their law regarding the interpretation of contracts is similar in all material respects, and their law

regarding the creation of tenancies is essentially identical.  As the discussion that follows will

show, the same result holds under the law of either state.

---

[4] Ms. Sumberg resided in Arizona when she applied for the annuity, but she effected the
1994 ownership transfer in New York (her permanent home from 1985 onward).  The Daffners
also resided in New York, and Ms. Daffner's estate has been administered pursuant to New York
law.

C.      **Whether the Annuity Is Ambiguous**

The question before the court is whether the 1994 ownership transfer created a right of survivorship between Ms. Sumberg's children .  That question must be assessed with reference to the Annuity, which governs Ms. Sumberg's rights to transfer ownership.  Mr. Sumberg argues that the Annuity is ambiguous regarding whether ownership transfers to multiple owners create tenancies in common or joint tenancies, and that therefore external evidence should be assessed to determine the intent of the parties.

The contract is not ambiguous.  It is silent regarding the particular question of tenancy creation, but that silence does not create ambiguity.  To the contrary, the Annuity recognizes the owner's unfettered right (apart from minor notification restrictions) to transfer ownership to whomever and in whatever legal manner she wishes.  Annuity at 0033.  The nature of the post-transfer ownership rights, then, is governed not by the Annuity's express terms, nor by the parties' unexpressed intent, but by the act of transfer itself, as governed by state property law (which was inherently incorporated into the annuity when the contract was first established).  *See United Van Lines, Inc. v. United States*, 448 F.2d 1190, 1195 (D.C. Cir. 1971) ("Because the regulation was in existence at the time [the party] entered on performance, it became, in effect, a part of the contract between the parties."); *Yeazell v. Copins*, 402 P.2d 541, 544 (Ariz. 1965) (same); *Dolman v. U.S. Trust Co. of N.Y.*, 138 N.E.2d 784, 787 (N.Y. 1956) ("[U]nless a contract provides otherwise, the law in force at the time the agreement is entered into becomes as much a part of the agreement as though it were expressed or referred to therein, for it is presumed that the parties had such law in contemplation when the contract was made and the contract will be construed in the light of such law.").

**D.      The Legal Effect of the Ownership Transfer**

The question that follows is whether Ms. Sumberg's letter to Kemper, assessed through

the lens of governing law, created a right of survivorship.  The answer to this question depends

on the wording of the letter.  The letter expressed a desire to "transfer ownership of the Contract

from me to my son, Steven M. Sumberg, and daughter, Billie S. Daffner, who are and will

remain the sole beneficiaries of the Contract."  Transfer Letter.  Because it did not expressly

provide for a right of survivorship, the letter did not create such a right, and the resulting tenancy

was in common.  *See* N.Y. Est. Powers & Trusts § 6-2.2(a) (McKinney 2007) ("A disposition of

property to two or more persons creates in them a tenancy in common, unless expressly declared

to be a joint tenancy.");[5] Ariz. Rev. Stat. Ann. § 33-431(a), (b) (2006) ("[A]ll grants and devises

of real property made to two or more persons create estates in common and not in joint tenancy .

. . .  A grant or devise to two or more persons may by express words vest the estate in the

survivor upon the death of a grantee or devisee when expressly declared in the grant, transfer or

devise to be a joint tenancy with right of survivorship.");[6] *see also* D.C. Code § 42-516(a) (2006)

---

[5] *See also* N.Y. Est. Powers & Trusts § 1-2.4 ("A disposition is a transfer of property by a person during his lifetime or by will."); § 1-2.15 ("Property is anything that may be the subject of ownership, and is real or personal property.").

[6] *See also Greenwood v. Comm'r of Internal Revenue*, 134 F.2d 915, 921 (9th Cir. 1943) (holding that though the Arizona statute refers only to real property, it applies equally to personal property).

("Every estate granted or devised to 2 or more persons in their own right, including estates granted or devised to husband and wife, shall be a tenancy in common, unless expressly declared to be a joint tenancy.").[7]  Accordingly, when Billie Daffner died, her interest passed to her estate.

### III. CONCLUSION

For the forgoing reasons, the court determines that Kemper's motion for partial summary judgment must be granted.  Accordingly, it is this 1st day of February, 2007, hereby

**ORDERED** that Kemper's motion for partial summary judgment [#76] is **GRANTED**; and it is further

**ORDERED** that the interests of Steven Sumberg and Billie Daffner in the interpleaded annuity in this case are declared to have been in common, without rights of survivorship, and Billie Daffner's interest in the annuity is declared to have passed to her estate upon her death; and it is further

**ORDERED** that on or before February 26, 2007, the parties shall file a case management report, which shall include a proposed case management plan with deadlines that shall govern the future proceedings in this action.  If the parties are unable to agree, each shall file its own proposed case management plan and deadlines.

Henry H. Kennedy, Jr.
United States District Judge

---

[7] Each of these provisions was in effect in 1984, when the annuity was established, and in 1994, when Ms. Sumberg transferred ownership of the policy to her children.